UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

----------------------------------------------------------x **MEMORANDUM AND ORDER**

JOAN JONES,                                             11-CV-5757 (FB)

                Plaintiff,

   -against-

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
----------------------------------------------------------x

*Appearances:*
*For the Plaintiff:*
ANTHONY M. CAMISA, ESQ.
323 Willis Avenue
Mineola, NY 11501

*For the Defendant:*
LORETTA E. LYNCH, ESQ.
United States Attorney
JAMES R. CHO, ESQ.
Assistant United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, NY 11201

**BLOCK, Senior District Judge:**

      Plaintiff Joan Jones seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for benefits under the Social Security Act (the "Act"). Both parties move for judgment on the pleadings. For the reasons set forth below, the Commissioner's decision is affirmed; accordingly, the Commissioner's motion is granted and Jones' complaint is dismissed.

I

      On February 26, 2005, Jones was injured in a car accident when her vehicle was struck from behind by another car. Since then she has been unable to work due to related injuries to her neck, lower back, hip, and spine. On October 17, 2005, Jones filed an application

for Supplemental Security Income ("SSI"). The Social Security Administration ("SSA") denied her claim, and Jones filed a second application. This too was denied. Upon Jones' request, the Administrative Law Judge ("ALJ") conducted a hearing, and subsequently denied her second disability claim. Following an appeal of the ALJ's determination, the Appeals Council remanded Jones' claim for a re-evaluation of her mental impairments. After holding another hearing, the same ALJ again found that Jones was not disabled. The Appeals Council thereafter denied Jones' request for review, rendering the Commissioner's decision to deny benefits final. Jones timely sought judicial review.

## II

In applying the familiar five-step process, the ALJ found as to the first four steps that Jones: (1) had not engaged in substantial gainful activity since February 26, 2005, the alleged onset date; (2) had severe impairments in the form of "neck and back pain secondary to a motor vehicle accident"; (3) did not suffer from impairments meeting the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; and (4) was unable to perform her past relevant work as a nurse's assistant. AR 16-21. Turning to step five, the ALJ determined that Jones had the residual functional capacity ("RFC") to perform a full range of sedentary work. AR 24; *see* 20 C.F.R. 1520(g) (setting forth the fifth step in the five-step analysis). Based upon the testimony of a vocational expert, the ALJ concluded that Jones had "acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy," and as such denied her

application.[1]  AR at 24.

## III

"In reviewing the final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence . . . means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted); *see also Selian v. Astrue*, 2013 WL 627702, at *6 (2d Cir. Feb. 21, 2013). In determining whether the agency's findings were supported by substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983).

Jones challenges the ALJ's disability determination, arguing that the Commissioner erred by: (A) failing to consider the combined effects of her physical and mental impairments during step two; (B) making an RFC determination not supported by substantial evidence; (C) relying upon the vocational expert's testimony; and (D) failing to consider whether Jones' impairments met or medically equaled listed impairment 12.06. As discussed below, these arguments are without merit.

**A. Failure to Consider Mental Impairments**

Jones initially argues that the ALJ erred at step two of the analysis by failing to

---

[1]The burden of proof is on the claimant in the first four steps, after which it shifts to the Commissioner at the fifth step. *See* 20 C.F.R. §§ 404.1560(c)(2), 416.920(b)-(g).

properly consider the "combined effect of all of [her] impairments." Specifically, she contends that the ALJ did not "properly consider how her adjustment disorder with mixed anxiety and depressed mood," when analyzed together with her physical impairments, impacted her ability to perform basic work activities. She argues that the ALJ's failure to consider her mental impairments at step two requires remand for reconsideration of her claim.

Contrary to Jones' assertions, the ALJ's opinion demonstrates that he gave full consideration to the combined effect of her mental and physical impairments at the second step of the analysis. Step two requires the ALJ to determine whether the claimant has a "physical or mental impairment" that is "severe" or a combination of impairments that is "severe." 20 C.F.R. 404.1520(c). After having determined that Jones had severe impairments in the form of "neck and back pain," the ALJ turned his attention to various reports and testimony relating to Jones' mental impairments. The ALJ began with a detailed discussion of the findings of Dr. Arlene Rupp-Goolnick, a consultative examiner for the state. At the outset, the ALJ recognized that Dr. Rupp-Goolnick had diagnosed Jones with "an adjustment disorder with mixed anxiety and a depressed mood," and that upon examination she displayed an apathetic mood and tearful affect. AR 19-20. However, the ALJ also relied upon Dr. Rupp-Goolnick's finding that despite these symptoms, Jones was "able to follow and understand and perform simple tasks independently, maintain attention and concentration . . . make appropriate decisions, interact with others and deal with stress." AR 20. Dr. Rupp-Goolnick found that the results of Jones' examination did "not appear to be consistent with any psychiatric problems that would significantly interfere with [her] ability to function on a daily basis," and that she could see "no basis for psychiatric disability." AR 785. Based

4

upon this evidence, the ALJ concluded that Dr. Rupp-Goolnick's findings supported the view that Jones' inability to maintain a schedule was due to her physical body pains rather than a psychiatric impairment. AR 20.

The ALJ then discussed the medical opinion of Dr. Steven Futrell. Recognizing that this doctor had likewise diagnosed Jones with "an adjustment disorder with mixed anxiety and depressed mood," the ALJ explained that in Dr. Futrell's opinion, Jones' attention, concentration, and memory were "only moderately impaired," and that she displayed an intellectual functioning in the "average range." AR 20. As the ALJ recognized, Dr. Futrell concluded that Jones was capable of independent self care, following simple instructions, performing simple tasks independently, and making appropriate decisions. AR 20.

The ALJ next discussed the opinion of a third consultative examiner, Dr. Michael Alexander. The ALJ noted that unlike the previous two doctors, Dr. Alexander had not diagnosed Jones with any type of a mental disorder. The ALJ then discussed Dr. Alexander's finding that Jones was "able to follow and understand simple directions, perform simple tasks, maintain attention and concentration, and maintain a regular schedule." AR 20. The ALJ also relied upon Dr. Alexander's conclusion that Jones' examination revealed she was able to learn new tasks, perform more complex tasks under supervision, make appropriate decisions, relate adequately with others, and appropriately deal with stress. AR 20, 458. After considering these findings, the ALJ cited Dr. Alexander's conclusion that "[Jones'] difficulties may be due to lack of motivation." AR 20.

Finally, in considering Jones' mental impairments, the ALJ also discussed the opinion of Dr. Leslie Fine, an independent medical expert and board certified psychiatrist. Dr.

5

Fine found that Jones had no history of psychiatric care, and that based upon his review of the three consultative examiners' reports, Jones had "no impairment which meets or equals the requirements of any listed mental disorder set forth in the Social Security regulations." AR 20.

Thus, it is evident that the ALJ carefully reviewed the complete contents of the medical record and gave full consideration to the combined effect of Jones' physical and mental impairments at step two of the analysis. While Jones identifies specific findings within the medical reports of Drs. Rupp-Goolnick and Futrell that the ALJ did not explicitly discuss, this does not mean that the ALJ ignored these conclusions. "Where, as here, the evidence of record permits [the Court] to glean the rationale of an ALJ's decision, [the Court] do[es] not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." *Mongeur*, 722 F. 2d at 1040. Notably, Jones' own treating physician, Dr. Patricia Hermogenes, found that there were no "cognitive deficits or psychiatric conditions that [would] interfere with [Jones'] ability to perform her occupation." AR 246. Accordingly, this first argument is without merit.

**B.    RFC Determination**

Jones next argues that because of the ALJ's failure to properly consider her mental impairments at step two of the evaluation process, the ALJ's subsequent RFC determination was not supported by substantial evidence. However, this argument fails since the Court has found that the ALJ gave full consideration to the combined effect of Jones' mental and physical impairments during the second step of the analysis.

6

Nor can Jones demonstrate that the ALJ failed to properly consider her mental impairments during the RFC analysis. An RFC assessment takes into account an individual's "physical and mental limitations." 20 C.F.R. 404.1545(a)(1). In determining a claimant's RFC, an ALJ must "consider all of the claimant[']s impairments, including the impairments that are not severe." *See* 20 C.F.R. 404.1520(e); AR 15. After reviewing the evidentiary record, the ALJ concluded that Jones had the RFC to perform a full range of sedentary work. In coming to this conclusion, the ALJ discussed Jones' physical limitations,[2] then proceeded to discuss her mental limitations:

> With respect to [Jones'] non-exertional impairment, it is not established that she suffers from depression. Instead, she has been found to have an adjustment disorder, if she has any mental impairment at all. The reports of the independent medical experts establish that she has no established loss of functioning in the areas of daily living and social functioning. If she has had any loss of memory, adaptation, or in sustained attention and concentration, it has been no more than mild. There are no established episodes of decompensation in a work or work like setting.[3]

AR 21. The ALJ's decision demonstrates that he fully considered the evidence in the record, and from this detailed review concluded that based upon her mental and physical limitations, she nonetheless had the RFC to perform a full range of sedentary work. AR 11-21. Because it was reasonable and based upon a thorough review of the record, the ALJ's RFC determination was supported by substantial evidence. *See Dumas v. Schweiker*, 712 F.2d 1545,

---

[2]Jones does not disavow the ALJ's findings as to her physical limitations.

[3]The Regulations list four broad areas used to assess an individual's functional limitations relating to mental impairments: "Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. § 404.1520a(c)(3).

7

1551, 1553 (2d Cir. 1983) *(*ALJ's determination was supported by substantial evidence where the decision contained "a complete and detailed recitation of the medical records and reports").

**C.     Reliance Upon Vocational Expert Testimony**

Jones next argues that the ALJ's conclusion that she was "not disabled" is erroneous because it relied upon flawed testimony from a vocational expert. During Jones' hearing, the ALJ presented a hypothetical to the vocational expert based upon Jones' RFC, age, education, and past relevant work experience. AR 24. After considering these factors, the vocational expert opined that there existed sedentary jobs in the local and national economy to which Jones' skills were transferrable.[4] AR 1007-1010. Accordingly, the ALJ concluded that Jones was "not disabled" within the meaning of the Act. AR 24.

Jones argues that the vocational expert's testimony cannot constitute substantial evidence supporting the ALJ's disability determination because it was given in response to a flawed hypothetical. Specifically, she contends that the ALJ's proffered hypothetical incorporated an incorrect RFC that failed to take into account Jones' mental impairments. However, this Court has already concluded that the ALJ's RFC determination properly considered Jones' physical and mental impairments and was based upon substantial evidence. Accordingly, the ALJ's reliance upon the vocational expert's testimony was proper. *See Butts*, 388 F.3d at 384 (2d Cir. 2004) (finding that it is standard practice for the Commissioner to use vocational expert testimony to satisfy his burden of showing that there exist jobs that the

---

[4]These included "record clerk" (4,190 jobs available locally; 143,000 nationally) and "information aide" (3,000 jobs available locally; 136,000 nationally).   AR 1008.

claimant is capable of performing, and that an ALJ may rely on the testimony of such an expert, including responses to hypotheticals); *Dumas*, 712 F.2d at 1554 (concluding that where substantial evidence supported the RFC determination used in hypotheticals posed to a vocational expert, the ALJ properly relied on that expert testimony).

**D.     Whether Jones had a Listed Impairment under 20 C.F.R. § 404.1520(d)**

Finally, Jones argues for the first time in her reply brief that the ALJ erred at step three of the analysis by failing to consider whether her impairments met or medically equaled listed impairment 12.06.[5]    Step three requires an ALJ to consider whether a claimant has an impairment or combination of impairments meeting the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  If the ALJ makes such a finding, and the claimant's impairment or combination of impairments meet the applicable duration requirements, the Commissioner "will find [the claimant] disabled."  20 C.F.R. 404.1520(d).  In conducting the step three analysis, the ALJ found that Jones' impairments did not meet or medically equal listed impairment 1.04A, "Musculoskeletal System Listings," and because she had not been diagnosed with depression, listed impairment 12.04, "Affective Disorders," was "not met or medically equaled."  AR 21.  Jones does not contest either of these findings.  Instead, she argues that because she was diagnosed with anxiety disorder, the ALJ erred in not considering whether her impairments met the criteria of listed impairment 12.06, "Anxiety Related Disorders."

Initially, this argument is procedurally deficient because Jones raises it for the

---

[5]While this determination precedes an RFC analysis, this issue is being addressed last due to Jones' failure to properly raise the argument in her opening brief.

9

first time in her reply brief. "It is well settled in the Second Circuit that a party may not raise an argument for the first time in his reply brief." *Morgan v. McElroy*, 981 F. Supp. 873, 876 n. 3 (S.D.N.Y.1997); *see also Evangelista v. Ashcroft*, 359 F.3d 145, 156 n. 4 (2d Cir.2004) (observing that the Second Circuit "will not consider an argument raised for the first time in a reply brief"); *Farey–Jones v. Buckingham*, 132 F. Supp. 2d 92, 100 (E.D.N.Y. 2001) ("[I]t is procedurally improper to raise an issue . . . for the first time in reply papers, thereby precluding the [other side] from offering a meaningful response.").

Nonetheless, the Court finds that the ALJ's determination that Jones' impairments did not meet or medically equal listed impairment 12.06 was a "reasonable interpretation of the medical evidence in the record." *Brown v. Apfel*, 174 F.3d 59, 65 (2d Cir. 1999). In order to meet or medically equal listed impairment 12.06, and thus "conclusively [be] presumed to be disabled and entitled to benefits," an individual must demonstrate that her impairments meet the "required level of severity." *See Dixon v. Shalala*, 54 F.3d 1019, 1022 (2d Cir. 1995); *see also* 20 C.F.R. § 404.1520(a)(4)(iii). Listed impairment 12.06 requires either a "complete inability to function independently outside of the area of one's home," or two of the following: "Marked restriction of activities of daily living; [m]arked difficulties in maintaining social functioning; [m]arked difficulties in maintaining concentration, persistence, or pace; [r]epeated episodes of decompensation, each of extended duration." *See* 20 C.F.R. Pt. 404, Subpart P, Appendix 1, § 12.06.

Jones' record is devoid of any support that her impairments met the "required level of severity" for listed impairment 12.06. Despite diagnosing Jones with "anxiety disorder," Dr. Hermogenes found that there were no "cognitive deficits or psychiatric

conditions that interfere[d] with [Jones'] ability to perform her occupation." AR 246, 258. Likewise, Dr. Futrell's report concluded that Jones failed to meet *any* of the functional limitations required for listed impairment 12.06. Dr. Futrell found that Jones displayed only a "mild" restriction of daily living activities, "moderate" difficulties in maintaining social functioning and concentration, and "one or two" episodes of deterioration, and he likewise concluded that the "evidence d[id] not establish the presence of" a complete inability to function independently outside of the home. AR 768-69. Finally, Dr. Fine testified during the hearing that Jones' impairments did not meet or medically equal listed impairment 12.06. AR 965.

The ALJ's decision demonstrates that he thoroughly reviewed and considered the reports and testimony of Drs. Hermogenes, Futrell, and Fine. While the ALJ's decision does not specifically discuss whether Jones' impairments met or medically equaled listed impairment 12.06, this does not mean that he failed to consider the issue. *See Heckler*, 722 F.2d at 1040 ("When . . . the evidence of record permits [the Court] to glean the rationale of an ALJ's decision, [the Court] do[es] not require that he . . . have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability."). Rather, it is clear from the ALJ's decision that he considered the full administrative record, and based his determination that Jones' impairments did not meet or medically equal a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1, on that substantial evidence.

Review of the record demonstrates that substantial evidence supports the ALJ's determination that Jones was not disabled under the meaning of the Act. As the ALJ's determination is based upon careful consideration of the full evidentiary record, there is no

11

reason to disturb the disability determination.

## IV

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings is granted, the final decision to deny benefits under the Act is affirmed, and Jones' complaint is dismissed.

**SO ORDERED.**

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 5, 2013